No. 12-56696

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DAVID BOORSTEIN,

Plaintiff-Appellant,

v.

MEN'S JOURNAL LLC,

Defendant-Appellee.

On Appeal from the United States District Court
For the Central District of California,
Case No. 2:12-cv-00771-DSF
The Honorable Dale S. Fischer, United States District Judge.

BRIEF FOR
PLAINTIFF-APPELLANT DAVID BOORSTEIN

Sean Reis
THE REIS LAW FIRM,
A.P.C.
30021 Tomas Street,
Suite 300
Rancho Santa
Margarita, CA 92688
Phone: (714) 352-5200

Jay Edelson
Rafey Balabanian
Ari Scharg
EDELSON LLC
350 N. LaSalle Street,
Suite 1300
Chicago, IL 60654
Phone: (312) 589-6370

Steven Woodrow
Megan Lindsey
EDELSON LLC
999 W. 18th Street,
Suite 3000
Denver, CO 80202
Phone: (303) 357-4878

*Attorneys for Plaintiff-Appellant DAVID BOORSTEIN*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ..................................................................... v

STATEMENT OF PERTINENT STATUTORY PROVISIONS ............. ix

STATEMENT OF RELATED CASES ...................................................... 1

STATEMENT OF JURISDICTION......................................................... 2

ISSUES PRESENTED FOR REVIEW ..................................................... 4

STANDARD OF REVIEW ....................................................................... 6

STATEMENT OF THE CASE ................................................................. 6

STATEMENT OF FACTS ...................................................................... 11

SUMMARY OF THE ARGUMENT ....................................................... 15

ARGUMENT ......................................................................................... 17

I.   CALIFORNIA'S STL LAW, § 1798.83(b), REQUIRES THAT
     BUSINESSES BOTH DISCLOSE CONTACT INFORMATION
     FOR CUSTOMERS TO MAKE REQUESTS UNDER
     § 1798.83(a) AND NOTIFY CUSTOMERS OF THEIR RIGHTS
     UNDER THE ACT—OF WHICH MEN'S JOURNAL DOES
     NEITHER.. ................................................................................. 17

     A.   Subdivision (b) Provides Businesses With Three Ways to
          Disclose The Required Contact Information And Notify
          Customers of Their STL Law Rights ..................................... 18

     B.   The STL Law Provides Three Distinct Remedies To
          Consumers For Violations (And Proposed Violations)
          Of The Act.............................................................................. 20

II.   MEN'S JOURNAL'S COMPLIANCE WITH § 1798.83(c)(2)—
      EVEN IF PRESUMED—WOULD NOT OBVIATE THE
      PUBLISHER'S NEED TO COMPLY WITH § 1798.83(b) IN
      ADDITION TO § 1798.83(a). ............................................................ 21

      A.   Men's Journal Must Respond To Customer
           Requests For Information Under § 1798.83(a)
           Irrespective Of Any Presumed Compliance
           With § 1798.83(c)(2) .............................................................. 23

      B.   Likewise, Qualified Businesses Like Men's Journal
           Must Comply With § 1798.83(b) Regardless Of
           Whether They Allow Customers To Opt-In Or
           Opt-Out Of Information Sharing .......................................... 25

III.  BOORSTEIN WAS NOT REQUIRED TO ALLEGE HE WAS
      "INJURED BY A VIOLATION" OF THE ACT TO
      DEMONSTRATE STATUTORY STANDING TO SUE ................ 27

      A.   Contrary to the Lower Court's Finding That The Act's
           Remedies Are Cumulative, Boorstein Was Not Required
           To Plead Specific Injuries In Order To Recover Civil
           Penalties Or Injunctive Relief .............................................. 28

      B.   Boorstein Has Standing To Seek Civil Penalties
           Under the STL Law ............................................................... 30

      C.   Boorstein Similarly Has Standing To Seek Injunctive
           Relief Under the Act .............................................................. 33

IV.   IN ANY CASE, BOORSTEIN HAS ALLEGED PLAUSIBLE
      AND COGNIZABLE STATUTORY INJURIES .......................... 36

      A.   Men's Journal Caused Boorstein To Suffer "Informational
           Injury" Because It Failed To Disclose Information That
           It Was Statutorily Required To Provide Under The Act...... 37

           1.   Boorstein was not required to request the identities
                of third parties with whom Men's Journal shared his

iii

information or the categories of information shared under § 1798.83(a) to have suffered informational injury under § 1798.83(b) .............................................. 39

2.    Men's Journal failed to disclose, as § 1798.83(b) required it to, the very contact information Boorstein would've needed to submit a request under § 1798.83(a) as well as a description of his rights under the Act—causing Boorstein to suffer more than "mere" procedural injuries ........................ 44

3.    Other subdivisions of the Act, including §§ 1798.84(b) and (c), show that consumers aren't required to make requests under § 1798.83(a) to bring claims for violations of § 1798.83(b)................... 47

B.    Men's Journal Caused Boorstein To Suffer Economic Damages Through Its Failure To Comply With The Act, Contrary To His Contractual Expectations .......................... 49

V.    BOORSTEIN HAS STATED A CLAIM FOR UNLAWFUL AND UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA'S UCL ...................................................... 53

CONCLUSION ........................................ 55

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ........................... 57

CERTIFICATE OF SERVICE ............................... 58

iv

# TABLE OF AUTHORITIES

## CASES

*Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n*, 389 F.3d 536 (6th Cir. 2004) ......................................................... 41, 43

*Bensman v. U.S. Forest Serv.*, 408 F.3d 945 (7th Cir. 2005) .................. 46

*Cetacean Community v. Bush*, 386 F.3d 1169 (9th Cir. 2004) .............. 27

*City of Sausalito v. O'Neil*, 386 F.3d 1186 (9th Cir. 2004) ..................... 27

*Corley v. United States*, 556 U.S. 303 (2009) .......................................... 34

*Dalisay v. Corbin Consulting Engineers, Inc.*, 303 F. App'x 423 (9th Cir. 2008) ............................................................................................. 6

*DiPirro v. Bondo Corp.*, 62 Cal. Rptr. 3d 722 (Cal. Ct. App. 2007) .................................................................................................. 31, 32

*Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) ....... 50, 51, 52

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) .............. 54

*Edwards v. First Am. Corp.,* 610 F.3d 514 (9th Cir. 2010) ................... 37

*Fed. Election Com'n v. Akins*, 524 U.S. 11 (1998) ................................... 38

*Fineman v. Sony Network Entm't Int'l LLC*, No. C 11-05680 SI, 2012 WL 424563 (N.D. Cal. Feb. 9, 2012) ................................................... 54

*Fraley v. Facebook, Inc.*, No. 11-CV-01726-LHK, 2011 WL 6303898 (N.D. Cal. Dec. 16, 2011) ................................................... 37

*Froyd v. Cook*, 681 F. Supp. 669 (E.D. Cal. 1988) ................................... 29

*Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614 (9th Cir. 2008) .................................................................................... 37

*Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383
   (5th Cir. 2003) ............................................................... 41, 42

*Hansen v. Dep't of Treasury*, 528 F.3d 597 (9th Cir. 2007) .................... 6

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .............. 38, 40, 41

*Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057
   (N.D. Cal. 2009) ................................................................. 29

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal.
   2011) ................................................................... 37, 50, 51

*Kizer v. Cnty of San Mateo*, 53 Cal. 3d 139 (1991) ................................. 31

*Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50 (2004) ................ 25

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ............................................... 6

*L.A. Cnty. Metro. Transp. Auth. v. Super. Ct.*, 20 Cal. Rptr. 3d 92
   (Cal. Ct. App. 2004) ............................................................. 31

*Miracle Auto Ctr. v. Superior Court*, 68 Cal. App. 4th 818 (1998) ......... 52

*Palmer v. United States*, 945 F.2d 1134 (9th Cir. 1991) ........................ 25

*Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930
   (N.D. Cal. 2011) ................................................................. 53

*Pub. Citizen v. Dep't of Justice*, 491 U.S. 400 (1989) ......................*passim*

*Resnick v. Avmed, Inc.*, No 11-13694, 2012 WL 3833035
   (11th Cir. 2012) ............................................................. 51, 52

*Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937 (9th Cir. 2004) ......................... 6

*Robinson v. United States*, 175 F. Supp. 2d 1215 (E.D. Cal. 2001) ....... 29

*Rojo v. Kliger*, 52 Cal. 3d 65 (1990) ......................................................... 29

*Ronyak v. Verde Valley Med. Ctr.*, 308 F. App'x 188
    (9th Cir. 2009) ..................................................................................... 3

*Sargeant v. Dixon*, 130 F.3d 1067 (D.C. Cir. 1997) ................................. 38

*Warth v. Seldin*, 422 U.S. 490 (1975) ............................................... 27, 37

*Whitaker v. Garcetti*, 11 F. App'x 921 (9th Cir. 2001) ............................ 33

*Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010) ........... 45, 46

*Yount v. Salazar*, No. CV11-8171-PCT DGC, 2013 WL 93372
    (D. Ariz. Jan. 8, 2013) ........................................................................ 33

*Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169
    (9th Cir. 1999) ..................................................................................... 34

**STATUTES**

28 U.S.C. § 1291 ........................................................................................ 3

28 U.S.C. § 1332(d)(2) ............................................................................ 2, 3

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................ 2, 7, 53

Cal. Civ. Code § 1798.83 ................................................................... *passim*

Cal. Civ. Code § 1798.84 ................................................................... *passim*

**RULES**

Fed. R. App. P. 4 ....................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ............................................................................. 6

9th Cir. R. 28-2.6 ...................................................................................... 1

**OTHER SOURCES**

Expert Witness Report of Dr. Serge Egelman, Ph.D., *In re Netflix Priv. Litig.*, No. 5:11-cv-00379-EJD, Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012) ......................................................... 50

## STATEMENT OF PERTINENT STATUTORY PROVISIONS

In 2003, the California legislature passed the Shine the Light

Law. The Act provides, *inter alia*, that:

> if a business has an established business relationship with a
> customer and has within the immediately preceding calendar year
> disclosed personal information that corresponds to any of the
> categories of personal information set forth in paragraph (6) of
> subdivision (e) to third parties, and if the business knows or
> reasonably should know that the third parties used the personal
> information for the third parties' direct marketing purposes, that
> business shall, after the receipt of a written or electronic mail
> request, or, if the business chooses to receive requests by toll-free
> telephone or facsimile numbers, a telephone or facsimile request
> from the customer, provide all of the following information to the
> customer free of charge . . . .

**Cal. Civ. Code § 1798.83(a)(1)-(2):**

(a) Except as otherwise provided in subdivision (d),

(1) In writing or by electronic mail, a list of the categories set forth
in paragraph (6) of subdivision (e) that correspond to the personal
information disclosed by the business to third parties for the third
parties' direct marketing purposes during the immediately
preceding calendar year.

(2) In writing or by electronic mail, the names and addresses of all
of the third parties that received personal information from the
business for the third parties' direct marketing purposes during
the preceding calendar year and, if the nature of the third parties'
business cannot reasonably be determined from the third parties'
name, examples of the products or services marketed, if known to
the business, sufficient to give the customer a reasonable
indication of the nature of the third parties' business.

**Cal. Civ. Code § 1798.83(b)(1):**

A business required to comply with this section shall designate a mailing address, electronic mail address, or, if the business chooses to receive requests by telephone or facsimile, a toll-free telephone or facsimile number, to which customers may deliver requests pursuant to subdivision (a). A business required to comply with this section shall, at its election, do at least one of the following:

(A) Notify all agents and managers who directly supervise employees who regularly have contact with customers of the designated addresses or numbers or the means to obtain those addresses or numbers and instruct those employees that customers who inquire about the business's privacy practices or the business's compliance with this section shall be informed of the designated addresses or numbers or the means to obtain the addresses or numbers.

(B) Add to the home page of its Web site a link either to a page titled "Your Privacy Rights" or add the words "Your Privacy Rights" to the home page's link to the business's privacy policy. If the business elects to add the words "Your Privacy Rights" to the link to the business's privacy policy, the words "Your Privacy Rights" shall be in the same style and size as the link to the business's privacy policy. If the business does not display a link to its privacy policy on the home page of its Web site, or does not have a privacy policy, the words "Your Privacy Rights" shall be written in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language. The first page of the link shall describe a customer's rights pursuant to this section and shall provide the designated mailing address, e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate. If the business elects to add the words "Your California Privacy Rights" to the home page's link to the business's privacy policy in a manner that complies with this subdivision, and the first page of the link describes a customer's

rights pursuant to this section, and provides the designated mailing address, electronic mailing address, as required, or toll-free telephone or facsimile number, as appropriate, the business need not respond to requests that are not received at one of the designated addresses or numbers.

(C) Make the designated addresses or numbers, or means to obtain the designated addresses or numbers, readily available upon request of a customer at every place of business in California where the business or its agents regularly have contact with customers.

## Cal. Civ. Code § 1798.83(c)(2):

If a business that is required to comply with this section adopts and discloses to the public, in its privacy policy, a policy of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing the personal information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes, as long as the business maintains and discloses the policies, the business may comply with subdivision (a) by notifying the customer of his or her right to prevent disclosure of personal information, and providing the customer with a cost-free means to exercise that right.

## Cal. Civ. Code § 1798.84(b):

Any customer injured by a violation of this title may institute a civil action to recover damages.

## Cal. Civ. Code § 1798.84(c):

In addition, for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty not to exceed three thousand dollars ($3,000) per violation; otherwise, the customer may recover a civil penalty of up to five hundred

dollars ($500) per violation for a violation of Section 1798.83.

**Cal. Civ. Code § 1798.84(d):**

Unless the violation is willful, intentional, or reckless, a business that is alleged to have not provided all the information required by subdivision (a) of Section 1798.83, to have provided inaccurate information, failed to provide any of the information required by subdivision (a) of Section 1798.83, or failed to provide information in the time period required by subdivision (b) of Section 1798.83, may assert as a complete defense in any action in law or equity that it thereafter provided regarding the information that was alleged to be untimely, all the information, or accurate information, to all customers who were provided incomplete or inaccurate information, respectively, within 90 days of the date the business knew that it had failed to provide the information, timely information, all the information, or the accurate information, respectively.

**Cal. Civ. Code § 1798.84(e):**

Any business that violates, proposes to violate, or has violated this title may be enjoined.

**Cal. Civ. Code § 1798.84(h):**

The rights and remedies available under this section are cumulative to each other and to any other rights and remedies available under law.

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Plaintiff-Appellant Boorstein ("Plaintiff" or "Boorstein") herein identifies all "known related case[s] pending in this court." As Boorstein explained in his Joint Motion to Consolidate Appeals and Reset the Briefing Schedule, (*see* Dkt. 9, filed March 1, 2013), the following appeals "raise the same or closely related issues" involving the interpretation of California's Shine the Light Law ("Shine the Light Law," "STL Law," or the "Act"), Cal. Civ. Code § 1798.83 *et seq*.:

> *Baxter v. Rodale, Inc.*, Appeal No. 12-56925,
>
> *King v. Condé Nast Publ'ns*, Appeal No. 12-57209,
>
> *Miller v. Hearst Commc'ns. Inc.*, Appeal No. 12-57231, and
>
> *Murray v. Time Inc.*, Appeal No. 12-17591.

These cases present common questions regarding the requirements for showing Article III and statutory standing under the Act, as well as statutory interpretation questions related to the elements needed to state violations of the STL Law.

On March 27, 2013, the Court issued an Order granting in part and denying in part the Joint Motion to Consolidate. (*See* Dkt. 13.) The Court declined to consolidate the appeals but determined that judicial

1

resources would be best served by assigning the five pending appeals to one judicial panel. Plaintiff-Appellants' opening briefs in *Boorstein*, *Baxter*, and *Murray* are due April 15, 2013. The opening briefs in *King* and *Miller* are due May 20, 2013.

## STATEMENT OF JURISDICTION

On December 22, 2011, Plaintiff filed a putative Class Action Complaint in the Superior Court of the State of California, Los Angeles County, alleging violations of the STL Law and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*. On January 27, 2012, Defendant-Appellee Men's Journal LLC ("Men's Journal" or "Defendant") filed a Notice of Removal, removing the Action to the United States District Court for the Central District of California. (Dkt. 1.)

Defendant's basis for removal was the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), which gives federal courts jurisdiction over class actions consisting of more than 100 persons, where at least one putative class member is diverse from at least one defendant, and there is at least $5,000,000 in controversy. Indeed, the case was filed as a putative class action on behalf of a class of California customers, the matter in controversy exceeds the sum or value of $5,000,000, exclusive

2

of interest and costs, and at least one member of the class of plaintiffs (which plausibly consists of well over 100 persons) is a citizen of a state different from Men's Journal. (*See id.* at 2-7); 28 U.S.C. § 1332(d)(2). Defendant Men's Journal is a limited liability company and maintains its principal place of business in New York, New York. (*See* Dkt. 1 at 6.) Plaintiff David Boorstein is a citizen of California and the putative class is limited to California residents. (*Id.* at 6-7.)

Boorstein appeals to this Court the district court's August 17, 2012 Order granting Men's Journal's Motion to Dismiss Boorstein's Second Amended Complaint in its entirety (R. 5)[1] and the August 17, 2012 Judgment dismissing his claims with prejudice (R. 4). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, which vests the Courts of Appeals with "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291; *Ronyak v. Verde Valley Med. Ctr.,* 308 F. App'x 188, 189 (9th Cir. 2009).

Plaintiff timely filed his Notice of Appeal with the district court on September 13, 2012. (R. 1-3.) Plaintiff's Notice of Appeal was timely pursuant to Federal Rule Appellate Procedure 4, which states that the

---

[1]    Citations to the Excerpts of the Record will be indicated by the applicable page range. ("R.")

notice of appeal must be filed within 30 days after the entry of

judgment or order appealed from.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the STL Law requires businesses that have

presumably complied with § 1798.83(c)(2) (or "Subdivision (c)(2)") by

allowing their customers to opt out of having their personal information

shared with third parties to still comply with § 1798.83(b) (or

"Subdivision (b)") by designating and disclosing contact information,

together with a statement of the customers' rights under the Act, to

facilitate customer requests under § 1798.83(a) (or "Subdivision (a)") for

the identities of third parties with whom the business has shared

customer information and the categories of information shared?

This issue was raised by Men's Journal in its Motion to Dismiss

the First Amended Complaint. (*See* Dkt. 27 at 3.) The district court

ruled on this issue in its Order dismissing the First Amended

Complaint. (*See* R. 47.)

2.      Whether Boorstein must allege that he suffered economic

harm as a result of Men's Journal's violations of the Shine the Light

Law to seek injunctive relief?

This issue was raised by Men's Journal in its Motion to Dismiss

the Second Amended Complaint. (*See* Dkt. 41 at 14-20.) The district court ruled on this issue in its Order dismissing the Second Amended Complaint. (*See* R. 5.)

3.      Whether Men's Journal's failure to disclose contact information in accordance with § 1798.83(b) for customers to make requests for information under § 1798.83(a) or a statement of customers' rights as required under the Act caused Boorstein to suffer a cognizable informational injury sufficient to confer statutory standing?

This issue was raised by Men's Journal in its Motion to Dismiss the First Amended Complaint (*see* Dkt. 27 at 13-18) and Motion to Dismiss the Second Amended Complaint (*see* Dkt. 41 at 8-9). The district court ruled on this issue in its Order dismissing the First Amended Complaint (*see* R. 49-50) and Order dismissing the Second Amended Complaint (*see* R. 5).

4.      Whether Boorstein alleged that Men's Journal caused him to suffer economic injury by violating the STL Law and denying him the full benefit of the bargain of his subscription agreement to *Men's Journal* magazine?

This issue was raised by Men's Journal in its Motion to Dismiss the First Amended Complaint (*see* Dkt. 27 at 9-13) and Motion to

5

Dismiss the Second Amended Complaint (*see* Dkt. 41 at 5). The district court ruled on this issue in its Order dismissing the First Amended Complaint (*see* R. 50-51) and Order dismissing the Second Amended Complaint (*see* R. 5).

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Dalisay v. Corbin Consulting Engineers, Inc.*, 303 F. App'x 423, 423 (9th Cir. 2008). This Court also reviews *de novo* a district court's dismissal for lack of standing. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010). The Court accepts all facts in the complaint as true, views them in the light most favorable to the plaintiff-appellant, and draws all reasonable inferences in his favor. *See Hansen v. Dep't of Treasury*, 528 F.3d 597, 599 (9th Cir. 2007). Likewise, the Court reviews issues of law *de novo*. *See Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937, 939 (9th Cir. 2004).

## STATEMENT OF THE CASE

This appeal is one of several similar matters seeking to define the rights of consumers under California's Shine the Light Law. Plaintiff David Boorstein challenges the district court's dismissal of his putative

6

class action, brought by Plaintiff on behalf of himself and all others similarly situated, alleging that Defendant Men's Journal failed to comply with the Act and engaged in unlawful business practices in violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200). Plaintiff Boorstein respectfully requests that this Court reverse the decision of the district court, reinstate the case, and remand the lawsuit for further proceedings.

Prior to Boorstein's initial complaint, Men's Journal ignored the STL Law as a matter of routine practice. The Act generally applies to businesses that share their customers' personal information with third parties for the third parties' direct marketing purposes ("qualified businesses"). Qualified businesses must both: (i) designate a mailing address, email address, phone number, or facsimile number ("contact information") where customers may request information about the categories of personal information the business is sharing with third parties and the identities of those parties, and (ii) disclose that contact information to customers along with a description of their rights under the Act using one of three statutorily defined methods set forth in § 1798.83(b)(1)(A)-(C).

Men's Journal—a magazine publisher and owner/operator of the

7

website www.mensjournal.com—requires customers who subscribe to its magazine and/or website to provide a wealth of personal information, and it profits by selling that information to third parties for their direct marketing purposes. Accordingly, to comply with the Act, Men's Journal is required to **designate** contact information where customers can request information about Defendant's information-sharing policies and **disclose** that contact information, in a specific manner, to its customers, using one of the three ways set forth in Subdivision (b). Boorstein alleges that Men's Journal ignored the obligations imposed by the STL Law and is thus liable to Boorstein and its other California customers under the Act.

As Boorstein explained in his recently filed Motion to Consolidate, his appeal is one of five appeals presently before the Ninth Circuit challenging several businesses' violations of the STL Law. Though the Court declined to consolidate the appeals, it assigned all five proceedings to a single judicial panel. The appeals challenge similar issues, including the elements needed to state a violation of the STL Law, the types of consumers who enjoy Article III and/or statutory standing to sue, and whether the Act provides alternative methods of compliance.

The central question in this case asks whether Boorstein has standing to state a claim under the STL Law. The district court interpreted the Act's remedies provisions as authorizing a private right of action only when the customer has been "injured by a violation" of the Act—i.e., when the customer suffers actual injury. Plaintiff, however, sought both civil penalties and injunctive relief, and a plain-language interpretation of the Act shows that it imposes no actual injury element for the purposes of statutory standing.

The district court also rejected Boorstein's alleged injuries. First, the court found that Boorstein did not suffer informational injury because he had not made a request under § 1798.83(a) for the identities of the third parties with whom Men's Journal shared his information or the categories of information shared. In doing so, the court overlooked that § 1798.83(b) imposes an affirmative obligation on qualified businesses to designate and disclose contact information for making § 1798.83(a) requests in the first place and that Boorstein wasn't required to "request" such contact information.

Further, Boorstein alleged two forms of economic damages. First, he pleads that Men's Journal caused a diminution in the value of his personal information and failed to provide him with the full benefits of

9

his paid-for magazine subscription. The court declined to accept either forms of damages, finding that Boorstein could not establish a causal connection between any harm suffered and Defendant's actions.[2] Likewise, the Court held that Boorstein failed to show that implicit in the cost and terms of his subscription agreement was a promise by Men's Journal that it would comply with all applicable laws, including the STL Law.

Finally, this appeal challenges the district court's interpretation of the Act, specifically § 1798.83(a), (b) and (c)(2). According to the district court, Subdivision (c)(2) provides an alternative method of compliance to (a) and (b) such that a business that fulfills Subdivision (c)(2) by providing consumers with a cost-free means for opting out of having their personal information disclosed to third parties need not attempt compliance with **any** of the Act's other provisions. The plain language of the STL Law, however, reveals that Subdivision (b)'s requirements are mandatory and that Subdivision (c)(2) merely describes an alternative method businesses can use to respond to customer requests made under

---

[2]    Plaintiff Boorstein does not appeal the district court's finding that he did not allege a diminution in the value of his personal information, resulting in economic damages.

Subdivision (a) for information about the identities of the third parties their personal information has been shared with and the categories of information disclosed. Thus, businesses must comply with Subdivision (b)—by designating and disclosing contact information for facilitating requests under Subdivision (a) and notifying customers of their rights under the Act—regardless of any compliance, presumed or otherwise, with Subdivision (c)(2).

On August 17, 2012, following full briefing on two motions to dismiss, the district court ultimately ruled that no amendment could cure the purported deficiencies in the complaint and dismissed the Second Amended Complaint with prejudice and without leave to amend. (R. 5.) On September 13, 2012, Boorstein timely filed his Notice of Appeal. (R. 1-3.)

## STATEMENT OF FACTS

Men's Journal publishes magazines, including the popular *Men's Journal*, and operates the website www.mensjournal.com. (R. 13,[3] ¶ 32.) When subscribing to Men's Journal's magazines or websites, customers are required to disclose several pieces of personal information, including

---

[3]    Plaintiff's Second Amended Class Action Complaint ("Complaint").

11

their name, address, e-mail address, telephone number, gender, date of birth, and credit or debit card number. (*Id.* ¶ 33.) Men's Journal maintains this information on its servers and profits by selling its customers' personal information to third parties who thereafter use the personal information for direct marketing purposes. (R. 8, ¶ 8; R. 13, ¶¶ 34, 35.)

Boorstein resides in the State of California. (R. 14, ¶ 40.) In or around August 2009, he subscribed to *Men's Journal* magazine. (*Id.* ¶ 41.) As with Men's Journal's other customers, Boorstein was required to disclose his name, mailing address, email address, telephone number, gender, birth date, and credit card information when subscribing to the magazine. (R. 14-15, ¶ 42.) Boorstein has since received and read the *Men's Journal* magazine. (R. 15, ¶ 43.) He has also visited Men's Journal's website and has viewed Men's Journal's privacy policy, located on its website at www.mensjournal.com/privacy-policy. (*Id.*)

### *Prior to filing his initial complaint, Men's Journal's privacy policy failed to disclose contact information for customers to make requests under § 1798.83(a)*

Despite the fact that Men's Journal collects and discloses its customers' personal information to third parties for direct marketing purposes, Men's Journal routinely violated the STL Law. At the time

12

that Plaintiff first visited www.mensjournal.com and when he initiated

this lawsuit, Defendant's online Privacy Policy failed to describe its

customers' rights pursuant to the Act, stating instead that:

> From time to time, we may use the personal information you provide us to send you information regarding Men's Journal magazine and/or Mensjournal.com features and subscriptions . . . We may also offer you other products, programs, or services that we believe may be of interest to you. You will always have the choice to opt out of receiving these offers, updates, and information.

It was only *after* Boorstein filed his initial complaint that Men's

Journal finally modified its online privacy policy in an attempt to

comply with the STL Law. (R. 14, ¶ 37.) In particular, Defendant

included a new section entitled "Your California Privacy Rights," which

purports to describe customers' rights under the Act, describe its opt-

out policy, and provide customers a means to exercise that policy. (*Id.*)

However, even after the changes to its Privacy Policy, Men's Journal

continues to incompletely disclose to its California subscribers

information that they are legally entitled to receive under the Act, such

as their right to request Shine the Light disclosures. (*Id.* ¶¶ 37, 38.)

### *The district court dismissed Boorstein's First Amended Complaint and Second Amended Complaint*

On June 14, 2012, the district court entered an Order granting

13

Men's Journal's Motion to Dismiss Boorstein's First Amended Complaint, with limited leave to amend. (R. 46-51.) The district court found Boorstein lacked statutory standing to sue under § 1798.83(b)(1) because he supposedly did not sufficiently allege that Men's Journal's violation of the STL Law caused him to sustain economic injuries (R. 49) and that he hadn't sustained a cognizable "informational injury" because he had not submitted a request for the identities of the third parties his information was shared with and the categories of information shared in accordance with § 1798.83(a). The Order granted Plaintiff leave to amend "to address the issues raised in the motion"— namely, that Plaintiff supposedly lacked statutory standing. (R. 51.)

On July 6, 2012, Boorstein filed his Second Amended Complaint, adding allegations that bear directly on his standing to sue Men's Journal under the Act. In particular, Plaintiff modified his Prayer for Relief to expressly request civil penalties under § 1798.84(c) and injunctive relief under § 1798.84(e). On August 17, 2012, the district court issued an Order dismissing Boorstein's Second Amended Complaint without leave to amend. (R. 5.) The district court found Boorstein had failed to cure the pleading deficiencies identified in the Order dismissing the First Amended Complaint and rejected Boorstein's

14

allegation that he need not plead statutory injury in order to seek civil penalties and injunctive relief for Men's Journal's alleged violations of the Act. (*Id.*)

As explained in detail below, this Court should reverse and remand.

## SUMMARY OF THE ARGUMENT

Defendant Men's Journal willfully violated California's STL Law and deprived Plaintiff Boorstein of information that it was required to disclose to him under the Act. The Act requires qualified businesses, such as Men's Journal, to designate an address, email address, phone number, or facsimile number where customers may request the identities of third parties with whom their information has been shared and the categories of information shared. It also requires that all qualified businesses comply with one of the methods described in § 1798.83(b) for disclosing designated contact information along with a statement of the customers' rights under the Act—regardless of whether customers can opt out of information sharing under § 1798.83(c)(2). Men's Journal failed to comply with either obligation—it neither designated contact information nor disclosed it per § 1798.83(b)—and therefore violated the Act.

15

Contrary to the district court's decision, Plaintiff Boorstein, as a California consumer who disclosed his personal information to Men's Journal, had standing to seek relief based on Men's Journal's failure to comply with the Act. Boorstein was not required to allege that he was "injured by a violation" of the Act to seek civil penalties and/or injunctive relief. Rather, Boorstein has established statutory standing because he is a California customer, he disclosed his personal information to Men's Journal, Men's Journal sold that information to third party marketers, and Men's Journal failed to designate or disclose required contact information or accurately or completely notify him of his rights under the Act.

Boorstein has also suffered cognizable injury. As a result of Men's Journal's violations, Boorstein suffered informational injury because he was deprived of information (i.e., disclosures pursuant to § 1798.83(b)) that Men's Journal was legally obligated to disclose to him pursuant to the Act. Boorstein also suffered economic damages because, by virtue of its failure to comply with § 1798.83(b), Men's Journal denied Boorstein the full benefit of his paid subscription to *Men's Journal* magazine.

Boorstein therefore enjoys statutory standing to seek relief under the Act. He need not allege actual injury to seek civil penalties and

16

injunctive relief and, in any event, has alleged both informational injury and economic damages. As explained further below, this Court should reverse and remand.

### ARGUMENT

**I.    CALIFORNIA'S STL LAW, § 1798.83(b), REQUIRES THAT BUSINESSES BOTH DISCLOSE CONTACT INFORMATION FOR CUSTOMERS TO MAKE REQUESTS UNDER § 1798.83(a) AND NOTIFY CUSTOMERS OF THEIR RIGHTS UNDER THE ACT—OF WHICH MEN'S JOURNAL DOES NEITHER.**

California enacted the STL Law in 2003 to protect consumers from companies that collect and surreptitiously share their customers' sensitive personal information with third parties. While the Act does not prohibit the sharing of such information, it empowers consumers to "shine the light" on companies' data sharing methods by requiring businesses to establish procedures for customers to request information regarding how the business shares their private data with third parties—specifically, the identities of the third parties and the categories of information shared.

To that end, under Subdivision (a) of the Act, customers may request—and companies doing business in California must provide in response—a list of all categories of personal information disclosed by

17

the business within the preceding year, as well as the names and addresses of the companies receiving that information. § 1798.83(a). To facilitate such requests and ensure consumers are put on notice of their rights, the Act requires that businesses designate and disclose specific contact information so that customers can make § 1798.83(a) requests, as well as notify customers of their rights under the STL Law. As explained below, § 1798.83(b) provides three ways that companies can do so.

### A.    Subdivision (b) Provides Businesses With Three Ways To Disclose The Required Contact Information And Notify Customers Of Their STL Law Rights.

To facilitate customer requests for information under § 1798.83(a) and inform customers of their rights under the STL Law, the Act requires covered businesses to: (1) ***designate*** a mailing address, email address, telephone number, or facsimile number for customers to deliver the requests, and (2) ***disclose*** the designated contact information to customers through one of the three methods set forth in § 1798.83(b)(1)(A)-(C).

First, businesses with traditional "brick and mortar" storefronts may comply with the Act's disclosure requirement by making designated addresses or phone numbers "readily available upon request

of a customer at every place of business in California where the

business or its agents regularly have contact with customers."

§ 1798.83(b)(1)(C).

On the other hand, Internet businesses without traditional "brick

and mortar" locations—such as Men's Journal—can comply by:

> Add[ing] to the home page of its Web site a link either to a
> page titled "Your Privacy Rights" or add[ing] the words
> "Your Privacy Rights" to the home page's link to the
> business's privacy policy . . . The first page of the link shall
> describe a customer's rights pursuant to this section and
> shall provide the designated mailing address, e-mail
> address, as required, or toll-free telephone number or
> facsimile number, as appropriate.

§ 1798.83(b)(1)(B).

As a third method, in cases where the business has "employees

who regularly have contact with customers," the business may:

> Notify all agents and managers who directly supervise
> employees who regularly have contact with customers of the
> designated addresses or numbers or the means to obtain
> those addresses or numbers and instruct those employees
> that customers who inquire about the business's privacy
> practices or the business's compliance with this section shall
> be informed of the designated addresses or numbers or the
> means to obtain the addresses or numbers.

§ 1798.83(b)(1)(A). This final option requires that businesses both: (1)

notify agents and managers with direct supervision over employees who

regularly have contact with customers of Defendant's designated

19

addresses or numbers to make requests under Subdivision (a) or the way customers can obtain them, and (2) instruct those employees to tell customers who ask about either the business's privacy policies or its compliance with the Act of the designated addresses or numbers or the means to obtain them.

Of these three avenues, Men's Journal could have availed itself of the second method by editing its privacy policy to "describe a customer's rights pursuant to this section" and providing "the designated mailing address, an e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate." As a hearing on the merits would ultimately show, Men's Journal failed to take either required action.

## B.    The STL Law Provides Three Distinct Remedies To Consumers For Violations (and Proposed Violations) Of The Act.

The STL Law expressly affords customers a private right of action, and Cal. Civ. Code § 1798.84 specifically enumerates three statutory remedies available to customers to enforce the Act. *See* § 1798.84(b), (c), (e). Under § 1798.84(b), "[a]ny customer injured by a violation of [the STL Law] may institute a civil action to recover damages." By its plain language, § 1798.84(b) allows customers to bring suit to recover actual economic damages caused by a violation of the STL Law.

20

Second, customers may enforce a willful, intentional, or reckless violation of the Act by filing a lawsuit to recover civil penalties:

> [F]or a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty not to exceed three thousand dollars ($3,000) per violation; otherwise, the customer may recover a civil penalty of up to five hundred dollars ($500) per violation for a violation of Section 1798.83.

§ 1798.84(c). Civil penalties are available in addition to—and, importantly, even in the absence of—economic damages caused by a violation of the Act. Boorstein expressly sought an award of civil penalties in his Complaint against Men's Journal.

Finally, § 1798.84(e) allows customers to enjoin "[a]ny business that violates, **_proposes_** to violate, or has violated [the Act]." (Emphasis added.) In addition to actual damages and civil penalties, Boorstein sought to enjoin Men's Journal pursuant to § 1798.84(e).

## II. MEN'S JOURNAL'S COMPLIANCE WITH § 1798.83(c)(2)— EVEN IF PRESUMED—WOULD NOT OBVIATE THE PUBLISHER'S NEED TO COMPLY WITH § 1798.83(b) IN ADDITION TO § 1798.83(a).

The district court found that the Act provides two ways for qualified businesses to comply with its terms. According to the district court, under the first method a qualified business must respond to customer requests for information under § 1798.83(a) and designate and

disclose information required by § 1798.83(b). Under the second method, qualified businesses must do no more than provide their customers with a method for opting-out of information sharing under § 1798.83(c)(2) and disclose that method on the company website. (*Id.*) According to the district court, these methods are "alternatives"—a qualified business that complies with one method is not required to comply with the other. (*See* R. 47.)

As explained further below, this conclusion was (and remains) erroneous for several reasons. First, by its plain language, § 1798.83(c)(2) expressly provides businesses with an alternative—but only for responding to customer inquires made under "subdivision (a)". Subdivision (c)(2) does not state that qualified businesses may ignore § 1798.83(a) requests entirely. Second, § 1798.83(c)(2) fails to ever mention § 1798.83(b); it only states that it presents an alternative method of complying with § 1798.83(a)—omitting Subdivision (b) entirely. Third, § 1798.83(b) imposes an affirmative obligation on all qualified businesses required to comply with "this Section." Therefore, qualified businesses must comply with Subdivision (b) regardless of whether they satisfy Subdivision (c)(2).

Ultimately, this Court should reverse the district court and find

22

that qualified businesses must respond to requests under Subdivision

(a) and disclose the required contact information and description of

rights under Subdivision (b), regardless of any compliance with

Subdivision (c)(2).

### A. Men's Journal Must Respond To Customer Requests For Information Under § 1798.83(a) Irrespective Of Any Presumed Compliance With § 1798.83(c)(2).

Subdivisions 1798.83(a) and (c)(2) are implicated only when the

customer actually requests information pursuant to the Act. Again,

Subdivision (a) states that, upon request, qualified businesses must

provide customers with (i) a list of categories of personal information

that the business has disclosed to third parties for direct marketing

purposes and (ii) the names and addresses of those third parties. In the

alternative, § 1798.83(c)(2) states that qualified businesses may "comply

with subdivision (a)" by "notifying the customer of his or her right to

prevent disclosure of personal information, and providing the customer

with a cost-free means to exercise that right." Therefore, upon request

for information under § 1798.83(a), certain[4] businesses may ***respond*** by

---

[4]      This would include those businesses that actually comply with subdivision (c)(2)'s requirements that any such business:

23

notifying the customer of the right to opt-out, rather than providing the otherwise required list of categories of information shared and the identities of the third party recipients.

This reading is consistent with the plain language of § 1798.83(c)(2), which requires that companies disclose their respective "opt-in" or "opt-out" practices in their official privacy policies. *See* § 1798.83(c)(2). The duty to notify customers of the right to opt-out is described separately, signaling that the legislature contemplated that such notification would occur as an alternative response to a customer's request for information under § 1798.83(a). Therefore, a qualified business must comply with § 1798.83(a) irrespective of its supposed compliance with subdivision (c)(2).

---

adopts and discloses to the public, in its privacy policy, a policy of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing the personal information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes.

§ 1798.83(c)(2). Men's Journal never made any showing before the district court that its privacy policy met these standards.

24

**B.    Likewise, Qualified Businesses Like Men's Journal Must Comply With § 1798.83(b) Regardless Of Whether They Allow Customers To Opt-In Or Opt-Out Of Information Sharing.**

Even if this Court were to uphold the district court's interpretation of § 1798.83(c)(2) as providing a method to avoid having to respond to customer requests made pursuant to § 1798.83(a) entirely, the Court should find that all qualified businesses must still comply with § 1798.83(b). Unlike § 1798.83(a) and (c)(2), § 1798.83(b) imposes an affirmative obligation on all "business[es] required to comply with this section" (i.e., required to comply with the Act). The phrase "this section" includes the entire STL Law, *see Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 60 (2004) (describing "hierarchical scheme" used "in subdividing statutory sections") and therefore necessarily incorporates both § 1798.83(a) and (c)(2). The lower court's interpretation re-writes § 1798.83(b) to read: "a business required to comply with § 1798.83(a) shall . . . ." *But see Palmer v. United States*, 945 F.2d 1134, 1136 (9th Cir. 1991) (court shouldn't "rewrite the plain language of a state statute"). Such an interpretation (*see* R. 47) is thus inconsistent with the Act's plain language.

Further, and as described above, § 1798.83(b) states that qualified

businesses "shall" designate an appropriate address or telephone number and fulfill at least one of the alternatives set forth in § 1798.83(b)(1)(A)-(C). Use of the term "shall" demonstrates that the duty to satisfy §1798.83(b)(1)(A)-(C) is mandatory and independent of the duty to comply with § 1798.83(a), let alone § 1798.83(c)(2).

Perhaps most critically, the information required to be disclosed by § 1798.83(b)—contact information for making requests for information and a description of the customer's rights under the Act—is needed so that customers can make requests under § 1798.83(a) and (c)(2) in the first instance. Without § 1798.83(b), consumers would not have the means necessary to exercise their rights under either § 1798.83(a) or (c)(2) because they wouldn't know of their rights under the Act or the address (or other contact information) for sending in requests. Thus, even if § 1798.83(a) and (c)(2) act as alternative ways of complying with the Act as a whole, all qualified businesses must still satisfy their independent obligations under § 1798.83(b).

Accordingly, this Court should find that § 1798.83(c)(2) merely provides an alternative method for responding to customer requests for information under Subdivision (a), and that it doesn't absolve a business's need to disclose contact information and provide a

description of customer rights pursuant to Subdivision (b).

## III. BOORSTEIN WAS NOT REQUIRED TO ALLEGE HE WAS "INJURED BY A VIOLATION" OF THE ACT TO DEMONSTRATE STATUTORY STANDING TO SUE.

This Court should further reverse the district court's dismissal of Boorstein's claim under the STL Law based on his supposed inability to establish statutory standing. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[I]f a plaintiff has suffered sufficient injury to satisfy Article III, a federal court must ask whether a statute has conferred 'standing' on that plaintiff."[5] *Cetacean Community v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004). That non-constitutional inquiry asks whether "a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit." *City of Sausalito v. O'Neil*, 386 F.3d 1186, 1199 (9th Cir. 2004).

The district court found that Boorstein lacked statutory standing

---

[5]     The district court expressly declined to decide the issue of Article III standing. (*See* R. 48 n.2) ("Because the Court concludes that Plaintiff has failed to allege a statutory injury under the STL law, the Court need not determine whether Plaintiff has alleged an injury in fact under Article III.").

because, supposedly, he did not allege a statutory injury. According to the district court, the Act "provides that a consumer who is 'injured by a violation' may recover damages" and therefore only those customers who allege actual injury have statutory standing. (*See* R. 47-48.) The district court's final dismissal order confirmed that even plaintiffs (like Boorstein) who seek civil penalties and/or injunctive relief must first demonstrate statutory injury because, according to the district court, the Act's remedies are "cumulative." (*See* R. 5.)

As explained below, this conclusion is incorrect for multiple reasons. First, if the Act's remedies were considered "cumulative", that wouldn't require a Plaintiff to have suffered all forms of injury to bring a claim. Second, by the STL Law's plain language, civil penalties may be awarded where the plaintiff has not suffered actual damages. Third, injunctive relief may be awarded for prospective future harm, including "proposed violations" of the Act, and therefore carries no actual injury requirement.

### A. Contrary To The Lower Court's Finding That The Act's Remedies Are Cumulative, Boorstein Was Not Required To Plead Injuries In Order To Recover Civil Penalties Or Injunctive Relief.

Section 1798.84(h) provides "[t]he rights and remedies available

under this section are cumulative to each other and to any other rights and remedies available under law." The lower court misinterpreted this provision to mean that only plaintiffs "injured by a violation of the Act"—as required for actual damages under § 1798.84(b)—may seek civil penalties under § 1798.84(c) or injunctive relief under § 1798.84(e).

Such a conclusion misunderstands how the term "cumulative" is used in the Act. Under the "new right-exclusive remedy" doctrine, where a statute "*creates* new rights and obligations not previously existing in the common law," the remedy defined by the statute "is deemed to be the exclusive remedy available for statutory violations, unless it is inadequate." *Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057, 1076 (N.D. Cal. 2009). However, when "a statutory remedy is provided for a pre-existing common law right, the newer remedy is generally considered to be cumulative, and the older remedy may be pursued at the plaintiff's election." *Robinson v. United States*, 175 F. Supp. 2d 1215, 1221 (E.D. Cal. 2001) (emphasis omitted) (citing *Rojo v. Kliger*, 52 Cal. 3d 65, 79 (1990)). California's doctrine of cumulative remedies enables courts to construe the relationship between remedial statutes and preexisting common law rights. *See Froyd v. Cook*, 681 F. Supp. 669, 674 (E.D. Cal. 1988).

The Act **_expressly_** authorizes cumulative remedies and therefore eliminates any confusion as to whether plaintiffs may seek remedies enumerated by § 1798.84 in addition to any common law remedies.[6] Thus, rather than require plaintiffs to allege actual injury under § 1798.84(b) to seek civil penalties under § 1798.84(c) or injunctive relief under § 1798.84(e), the Act enables plaintiffs to pursue any combination of those remedies. Therefore, Boorstein need not have alleged that he was "injured by a violation" of the Act, as required for claims for damages under § 1798.84(b), as a prerequisite for pursuing other available remedies.

## B.    Boorstein Has Standing To Seek Civil Penalties Under the STL Law.

To conclude that Boorstein was required to have alleged actual injury to recover civil penalties, the district court also relied on the fact that the civil penalty provision, § 1798.84(c), begins with the prepositional phrase "In addition" to conclude that Boorstein was required to have alleged actual injury to recover civil penalties. (*See* R. 5.) But § 1798.84(c) provides that a "customer" may recover a civil

---

[6]    Common law claims could potentially include causes of action for negligence, breach of contract, and fraud.

penalty for a business's "willful, intentional, or reckless violation" of the STL Law. The provision does not limit standing to customers "injured by a violation of the Act," but rather encompasses any "customer" defined as:

> an individual who is a resident of California who provides personal information to a business during the creation of, or throughout the duration of, an established business relationship if the business relationship is primarily for personal, family, or household purposes.

*See* § 1798.83(e)(1). Thus, Boorstein was only required to show that he was a customer, not that he suffered actual damages.

Moreover, unlike actual damages, the "primary purpose [of civil penalties] is to secure obedience to statutes and regulations imposed to assure important public policy objectives." *Kizer v. Cnty of San Mateo*, 53 Cal. 3d 139, 147-48 (1991). As such, civil penalties provisions are designed to deter businesses from violating the Act—not to compensate plaintiffs for actual damage they may sustain. *See DiPirro v. Bondo Corp.*, 62 Cal. Rptr. 3d 722, 748 (Cal. Ct. App. 2007) (holding that where a statute allows for civil penalties for violations of the statute, it "***does not have a standing requirement***" and a plaintiff need not allege or prove damages to maintain an action) (emphasis added); *see also L.A. Cnty. Metro. Transp. Auth. v. Super. Ct.*, 20 Cal. Rptr. 3d 92, 99 (Cal.

31

Ct. App. 2004) (civil penalty provisions reflect the "Legislature's intent to encourage and aid private parties to help in enforcing certain laws" and also "helps to ensure that plaintiffs receive ample compensation, irrespective of their actual damages.") (emphasis omitted).

Therefore, consistent with public and legislative policy supporting the imposition of civil penalties, Boorstein was not required to allege actual damages as a prerequisite to recovering civil penalties under the Act. Rather, the threat of civil penalties is statutorily designed to deter Men's Journal and other companies from violating the STL Law. As the California appellate court explained in *DiPirro*, traditional standing principles—where a plaintiff must allege some form of economic or similarly cognizable injury—are simply not applicable when a plaintiff seeks an award of civil penalties. *See* 62 Cal. Rptr. 3d at 748. Civil penalties instead encourage customers to bring suit when companies violate statutes, such as the STL Law, and further to prevent companies from avoiding responsibility based on technical defects.

Accordingly, Boorstein has statutory standing to seek civil penalties because he is a "customer" (R. 18, ¶ 54), Men's Journal willfully violated the Act (R. 19 ¶ 62), and its violations deprived Boorstein of information he was entitled to under the statute. (R. 20 ¶

32

65).

### C.    Boorstein Similarly Has Standing To Seek Injunctive Relief Under the Act.

Boorstein's Complaint also should've been allowed to proceed on his claims for injunctive relief. Subdivision 1798.84(e) provides that "[a]ny business that violates, proposes to violate, or has violated [the STL Law] may be enjoined." The lower court seemingly overlooked this language in finding that the Act does not authorize a "private right of action solely for injunctive relief" and that a private plaintiff could only seek injunctive relief in conjunction with actual damages. (*See* R. 5.) This position is inconsistent with the plain language of the Act and commonly understood principles underlying injunctive relief.

"In order to have standing to seek injunctive relief, a plaintiff must demonstrate a likelihood of repeated injury or future harm to the plaintiff in the absence of the injunction." *Whitaker v. Garcetti*, 11 F. App'x 921, 922 (9th Cir. 2001); *Yount v. Salazar*, No. CV11-8171-PCT DGC, 2013 WL 93372, at *3 (D. Ariz. Jan. 8, 2013) (citing *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009) (party seeking injunctive relief "must establish a present injury or an 'actual and imminent'—not 'conjectural or hypothetical'—threat of future injury"). Consistent with

33

the common standard for injunctive relief, the plain language of
§ 1798.84(e) authorizes injunctive relief against any business that
"violates" or "proposes to violate" the Act.

An interpretation that requires the plaintiff to have suffered
actual injury to seek injunctive relief reads the phrase "proposes to
violate" entirely out of the statute. Such a reading simply cannot be
reconciled with the Act's allowance for injunctive suits in response to
***proposed*** violations of the STL Law. When construing legislation,
courts must attempt to give effect to each statutory provision. *See, e.g.,*
*Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169, 1177 (9th Cir.
1999) (court must give "full effect to each provision of a statute"). Under
the district court's interpretation of the Act, however, no customer could
ever enjoin a business that "proposes" to violate the Act because no
violation, and by extension no injury or damages, had yet occurred.
Thus, requiring customers to sustain economic injuries before suing
under § 1798.84(e) would improperly render the Act's "propose to
violate" provision mere surplusage. *See Corley v. United States*, 556
U.S. 303, 313 (2009) (statutory provisions should not be interpreted in a
way to render another provision superfluous).

There also is nothing to support the position that the Act ***does not***

34

authorize a private right of action "solely for injunctive relief" but ***does*** authorize injunctive relief when the plaintiff suffers a "statutory injury." (*See* R. 5.) The district court concluded that the "injured by a violation" language in § 1798.84(b) applies to all other remedies. This is not true. By its own terms, the language only applies to customers seeking actual damages because such customers would have to show economic injury. *See* § 1798.84(b). Indeed, the district court's position that the "injured by a violation" language carries throughout the other remedies provisions directly contradicts the plain language of § 1798.84(e), which authorizes injunctive relief for proposed violations.

Finally, Boorstein goes beyond alleging that Men's Journal "proposes" to violate the STL Law and alleges that Men's Journal has actually failed to comply with the disclosure requirements of the Act. Nothing in the Act indicates that standing to seek injunctive relief changes when a business's infraction matures from a proposed transgression into an actual violation. Just the opposite is true: injunctive relief is available against businesses that "have violated" the Act. *See* § 1798.84(e). Hence, Boorstein has standing to enjoin Men's Journal's violations of the STL Law, continuing and otherwise.

In sum, Boorstein was not required to allege damages in order to

35

demonstrate his statutory standing to seek civil penalties and injunctive relief.

## IV.  IN ANY CASE, BOORSTEIN HAS ALLEGED PLAUSIBLE AND COGNIZABLE STATUTORY INJURIES.

To the extent Boorstein was required to plead a statutory injury to pursue civil penalties and injunctive relief, he sufficiently did so.[7] (R. 5.) As explained below, Boorstein specifically alleged two injuries caused by Men's Journal's failure to comply with the Act: (i) informational injury caused by Men's Journal's failure to disclose contact information and a description of rights under § 1798.83(b), and (ii) economic injury caused by Men's Journal's failure to provide Boorstein with the full benefits of his paid subscription agreement to *Men's Journal* magazine. Either of these injuries is alone sufficient to confer statutory standing—Boorstein pleads both injuries.

---

[7]  In its order dismissing Boorstein's Amended Complaint, the district court upheld its previous Order where it had discussed and rejected Plaintiff's "three theories of how he was 'injured' as a result of Defendant's alleged violation of the STL law." (*See* R. 48.)

### A. Men's Journal Caused Boorstein To Suffer "Informational Injury" Because It Failed To Disclose Information That It Was Statutorily Required To Provide Under The Act.

First, Boorstein suffered informational injury because Men's Journal failed to provide him with information that it was required to provide under § 1798.83(b). Injury can "exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 711 (N.D. Cal. 2011) (quoting *Edwards v. First Am. Corp.,* 610 F.3d 514, 517 (9th Cir. 2010)) (citation omitted); *see also Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008) (quoting *Warth*, 422 U.S. at 500)); *see also Fraley v. Facebook, Inc.*, No. 11-CV-01726-LHK, 2011 WL 6303898, at *10 (N.D. Cal. Dec. 16, 2011) (finding that plaintiffs' claims that advertising practices violated their rights under California statute satisfied the injury-in-fact Article III standing requirement).

The United States Supreme Court has held—under the more stringent standing requirements of Article III—that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which

37

must be publicly disclosed pursuant to a statute."[8] *Fed. Election Com'n v. Akins*, 524 U.S. 11, 21 (1998) (*citing Pub. Citizen v. Dep't of Justice*, 491 U.S. 400, 449 (1989)) (failure to disclose information pursuant to Federal Advisory Committee Act "constitutes sufficiently distinct injury to provide standing to sue"); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (injury in fact established where information required under the Fair Housing Act was withheld); *Sargeant v. Dixon*, 130 F.3d 1067, 1070 (D.C. Cir. 1997) ("The receipt of information is a tangible benefit the denial of which constitutes an injury. . . .").

Boorstein suffered informational injury because Men's Journal failed to make information publicly available as required by the STL Law. Specifically, Men's Journal violated § 1798.83(b) by: (i) failing to designate a mailing address, email address, telephone number, or facsimile number for customers to deliver requests for information under § 1798.83(a) and (ii) failing to describe its California customers' rights under the STL Law, including the right to request information

---

[8]     As explained above, the district court did not rule on whether Boorstein had Article III standing. Regardless, Boorstein maintains that the three injuries he suffered as a result of Men's Journal's violation of the Act are also adequate to show an "injury-in-fact" sufficient to confer Article III standing.

about its information sharing practices. (*See* R. 19, ¶ 62; §

1798.83(b)(1)(B)). Plaintiff was thus denied both critical contact

information as well as a description of his rights under the Act—a well-

recognized legal injury.

Men's Journal has admitted it violated these disclosure

requirements. First, the privacy policy does not contain a description of

its customers' rights under the Act. (*See* Motion to Dismiss First

Amended Complaint, Dkt. 27 at 6-7.) Second, the privacy policy does not

provide customers with the designated address or phone number to

submit requests for information in accordance with subdivision (a).

(*Id.*). Accordingly, by Men's Journal's own admission, it has failed to

adhere to § 1798.83(b)(1)(B)'s designate and disclosure requirements.

These allegations are sufficient to demonstrate that Boorstein was

injured by Men's Journal's violations of the Act and to establish

standing to sue under § 1798.83 *et seq.*

> **1.    Boorstein was not required to request the
> identities of third parties with whom Men's
> Journal shared his information or the categories
> of information shared under § 1798.83(a) to have
> suffered informational injury under § 1798.83(b).**

The lower court held that Boorstein had not suffered

informational injury because he neither requested Shine the Light

39

disclosures under § 1798.83(a) nor alleged that he would have done so had Men's Journal properly designated and disclosed contact information under § 1798.83(b). (R. 49.) According to the district court, "the existing case law only recognizes such 'informational injury' where the plaintiffs have requested information and have been subsequently denied it." (*Id.*)

This is inaccurate. As the Hon. Gary A. Feess explained in *Baxter v. Rodale*, No. 2:12-cv-00585, Dkt. 42 (C.D. Cal. Aug. 29, 2012) ("*Baxter* Order"),[9] the issue of whether a request for information is necessary for standing purposes was not raised in any of the prevailing Supreme Court opinions. (*See id.* at 6) (discussing *Akins*, 524 U.S. 11; *Pub. Citizen*, 491 U.S. 440; *Havens*, 455 U.S. 363 (1982)). Although it's true that *Akins* and its progeny involved plaintiffs that had affirmatively requested—and had been subsequently denied—information, the Supreme Court defined the injury more broadly, finding injury in fact based solely on plaintiffs' "inability to obtain information . . . the statute requires [to be made] public." *Akins*, 524 U.S. at 21 (citing *Pub. Citizen*,

---

[9]    The plaintiff in *Baxter* alleged that defendant violated the STL Law by failing to designate contact information and make appropriate disclosures under § 1798.83(b). The final dismissal order in the *Baxter* case is also on appeal to the Ninth Circuit, Appeal No. 12-56925.

491 U.S. at 449, *Havens*, 455 U.S. at 373-74).

Where a statute requires certain information to be made public—such as with § 1798.83(b)—a showing of "informational injury" does not depend on plaintiffs requesting information and having that request subsequently denied. Indeed, "in the two circuit cases where the issue was squarely presented, the courts held that no such request is required to establish Article III standing." (*See Baxter* Order at 6) (citing *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n*, 389 F.3d 536, 539-40 (6th Cir. 2004); *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 388 (5th Cir. 2003)).

In *American Canoe*, the "Sixth Circuit explicitly found that the environmental groups were not required to request that information prior to bringing suit." (*Baxter* Order at 6.) There, plaintiffs—two environmental organizations—alleged defendants failed to comply with federal statutes that required the defendants to monitor and report certain polluting activities. *See Am. Canoe*, 389 F.3d 536. Given the defendants' alleged failure to generate the required reports, plaintiffs alleged they were prevented from determining whether defendants complied with applicable environmental laws. In finding plaintiffs suffered informational injury, the circuit court explained:

41

> Although this case involves a situation in which no agency previously denied the information desired to the plaintiffs, the injury remains the same . . . This is precisely the injury alleged in Public Citizen and in the Freedom of Information Act cases. This might be a "generalized grievance" in the sense that up to the point they request it, the plaintiffs have an interest in the information shared by every other person, but it is not an abstract grievance in the sense condemned in *Akins*: the injury alleged is not that the defendants are merely failing to obey the law, it is that they are disobeying the law in failing to provide information that the plaintiffs desire and allegedly need. This is all that plaintiffs should have to allege to demonstrate informational standing where Congress has provided a broad right of action to vindicate that informational right.

*See id.* at 545-46 (quotations omitted).

Similarly, in the Fifth Circuit's decision in *Grant*, the plaintiff had standing to sue notwithstanding his failure to previously apply for services related to the information sought:

> Grant alleges that the state's failure to provide adequate information . . . inhibited him from making an informed decision regarding whether to apply for waiver services . . . To decide that Grant lacks informational standing would require others in his position to apply for services before obtaining information, a result that, in his words, puts the cart before the horse.

(*Baxter* Order at 7) (citing *Grant*, 324 F.3d at 388) (citations omitted).

As a result, where a statute (such as the STL Law) requires that an entity provide certain information, the only "injury" that is required is the Plaintiff's failure to receive the information that the statute

42

required be made available.

Boorstein's injury here is the same as in *Public Citizens* and *American Canoe* because Men's Journal was under a legal obligation to disclose information that would enable Boorstein to exercise his statutorily-guaranteed right to: (i) inquire about the identities of third parties with whom Men's Journal had shared his information and the categories of information shared, (ii) make informed decisions about his privacy and personal information, and (iii) monitor and control the disclosure and use of his personal information. (*See* R. 20, ¶ 66.) Men's Journal failed to do so.

Subdivision 1798.83(b) requires companies like Men's Journal to both describe its customers' rights under the Act (i.e., to request and receive information about how his personal data is being shared) and to disclose the necessary phone number or address that customers can use to request such information in the first place. As in *American Canoe*—where the defendant failed to comply with its reporting requirements and thereby prevented plaintiff from researching the defendant's compliance with pollution laws—Men's Journal failed to disclose contact information and describe its customers' rights under the Act and, in doing so, injured Boorstein by preventing him from learning about his

43

rights and interfering with his ability to request information under the Act. These facts are sufficient to demonstrate the requisite informational injury, and thus to confer standing, on Boorstein.

> **2.    Men's Journal failed to disclose, as § 1798.83(b) required it to, the very contact information Boorstein would've needed to submit a request under § 1798.83(a) as well as a description of his rights under the Act—causing Boorstein to suffer more than "mere" procedural injuries.**

The district court also found that Men's Journal's failure to comply with § 1798.83(b) "inflicts merely a procedural injury" rather than a cognizable informational injury. (*See* R. 50.) According to the district court, a business's violation of § 1798.83(b) "deprives the Plaintiff of Defendant's *contact information*—information meant to facilitate requests for disclosures" and "thus the failure to provide that information inflicts merely a procedural injury." (*Id.*)

Such a conclusion is flawed—it only considers a portion of the information that must be disclosed under § 1798.83(b). In addition to contact information, § 1798.83(b) requires that Men's Journal substantively "describe a customer's rights under this section", including the right to request information about the identities of third parties with whom their information has been shared and the

44

categories of information shared (or, if subdivision (c)(2) has been properly complied with, the right to opt out of information sharing altogether). *See* § 1798.83(b). Because § 1798.83(b) imposes an affirmative obligation on companies to provide notice of customers' rights—which is substantive in nature (as opposed to being merely procedural)—Men's Journal's failure to provide the required disclosures is sufficient to constitute informational injury.

That Subdivision (b) requires Men's Journal to disclose substantive information regarding its customers' rights under the Act distinguishes it from the provision at issue in *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010), upon which the district court relied. The law analyzed in *Wilderness* required the Secretary of Agriculture to establish "a right to process and to participation" by creating notice and comment procedures regarding proposed regulatory decisions. While § 1798.83(b) requires that Men's Journal provide contact information to facilitate customer requests for information, the Act (including § 1798.83(b)) was passed to require businesses like Men's Journal to provide a description of a customer's rights under the Act. The requirement that businesses provide "contact information" supports the primary purpose of the STL Law by providing a means by which

45

customers can exercise their rights. Accordingly, the right to
information required to be disclosed by § 1798.83(b) is not merely
procedural, and its denial is sufficient to confer standing via
informational injury.

Finally, while it is true that § 1798.83(b) facilitates requests under
§ 1798.83(a), that doesn't mean that a failure to provide such
information cannot also result in informational injury. No court—
including *Wilderness*—has stated that a cognizable informational injury
must be entirely distinct from a procedural injury. While "[d]eprivation
of a procedural right without some concrete interest that is affected by
the deprivation—a procedural right *in vacuo*—is insufficient to create
Article III standing," *id.*, a plaintiff's assertion of informational injury
can be "grounded in, but apart from, their procedural rights granted by
the [statute]," *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 955 (7th Cir.
2005). The *Wilderness* court found the plaintiff had not suffered
informational injury because the statute did not itself provide a right to
information, not because the provision had procedural implications. *See*
*Wilderness*, 622 F.3d at 1257-61.

Therefore, regardless of whether § 1798.83(b) requires disclosure
of procedural information, Boorstein has shown informational injury

46

because § 1798.83(b) confers an affirmative right to substantive information—a description of customer rights under the Act—and because the overall goal of the Act is to provide customers with information regarding a business's information-sharing practices. This Court should therefore reverse the finding that Boorstein merely suffered non-actionable procedural injuries based on Men's Journal failure to comply with § 1798.83(b).

### 3. Other subdivisions of the Act, including §§ 1798.84(b), (c) and (d), show that consumers aren't required to make requests under § 1798.83(a) to bring claims for violations of § 1798.83(b).

According to the district court, other sections of the Act, including the remedies provisions set forth in § 1798.84, demonstrate Boorstein's lack of standing. (*See* R. 49.) Per the lower court's reasoning, those provisions "allow a customer to recover damages where a business has failed to provide information, provided inaccurate or incomplete information, or failed to provide information in a timely manner" but don't allow for damages where no information has been requested. (*Id.*)

Just the opposite is true: the provision cited by the lower court as well as other provisions flatly demonstrate that a failure to comply with Subdivision § 1798.83(b) causes injury irrespective of any request made

47

under § 1798.83(a). First, Subdivision 1798.84(b) provides that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages." It does not limit the scope of "violations" to those resulting from improper response to a request for information. Furthermore, Subdivision 1798.84(c) authorizes civil penalties for "willful, intentional, or reckless violation[s]." Once again, there is no language limiting the scope to violations arising from requests for information.

Rather, the language relied upon by the district court appears in § 1798.84(d). Subdivision 1798.84(d) is not a remedies provision—it describes an affirmative defense available to defendants for certain violations of the Act. *See* § 1798.84(d). Subdivision 1798.84(d) does not affect Boorstein's statutory standing as it does not provide an exhaustive list of potential violations of the Act or indicate that a plaintiff must submit a request for information to have standing.

Indeed, Men's Journal's reading of the Act, as adopted by the lower court, threatens to render § 1798.83(b) superfluous. The STL Law imposes certain affirmative duties related to its customers' personal information and the disclosure of such information to third parties. Two provisions—§ 1798.83(a) and (c)—require qualified businesses to

48

respond to customer requests for information. Unlike these two provisions, § 1798.83(b) requires that qualified businesses designate an address or number where customers can submit requests for information under § 1798.83(a) and comply with one of the three disclosure options described in § 1798.83(b)(1). *See* § 1798.83(b).

Moreover, businesses are required to describe their customers' rights under the Act. *Id.* Adopting an interpretation that requires consumers to make requests under § 1798.83(a) prior to seeking any remedies under the Act would make it impossible to hold any company liable for failure to comply with § 1798.83(b), rendering the subdivision's mandatory obligations (e.g., "A business . . . shall designate [contact information] to which customers may deliver requests pursuant to subdivision (a)") completely meaningless.

Accordingly, Boorstein alleged an informational injury sufficient to confer statutory standing.

## B. Men's Journal Caused Boorstein To Suffer Economic Damages Through Its Failure To Comply With The Act, Contrary To His Contractual Expectations.

The Court should also find that Boorstein alleged economic harm because Men's Journal failed to provide him the full value of his paid

49

subscription to *Men's Journal* magazine.[10] Once again adopting Men's Journal's arguments, the lower court rejected Boorstein's allegations that he suffered economic damages, explaining that Boorstein had no expectation that Men's Journal would follow the law because he did not "claim that Defendant promised compliance with § 1798.83" or that "he reasonably expected that Defendant would do so." (R. 50-51.)

This conclusion overlooks relevant authorities. When a plaintiff pays for a service and is entitled to certain privacy protections as a part of that service (e.g., Shine the Light disclosures), failure to provide those protections gives rise to economic injuries.[11] *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 715 (citing *Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1111-13 (N.D. Cal. 2010); *see also Doe 1 v. AOL, LLC*,

---

[10]    It is important to recall that Boorstein need not allege actual damages because, as explained above, he sustained informational injury based on Men's Journal's failure to comply with the Act. The only remedies provision that requires actual damages is § 1798.84(b) (the "damages" provision), so regardless of economic damages Boorstein has standing to seek civil penalties and injunctive relief under § 1798.84(c) and (e).

[11]    A study by Expert Witness Dr. Egelman confirmed that consumers price privacy into their purchases. *See* Expert Witness Report of Dr. Serge Egelman, Ph.D., *In re Netflix Priv. Litig.*, No. 5:11-cv-00379-EJD, Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012) (explaining that consumers would command a discount in exchange for waiving privacy protections and describing similar studies).

50

719 F. Supp. 2d at 1111 (finding economic harm where "disclosure of [Class's] undeniably sensitive information is not something that [they] bargained for when they signed up and paid fees for [Defendant's] service."). *Cf. Resnick v. Avmed, Inc.*, No 11-13694, 2012 WL 3833035, *8 (11th Cir. 2012) (unjust enrichment where plaintiffs paid for services which included information privacy and defendant failed to fulfill those promises).

The Northern District of California's decision in *Facebook* is instructive. There, the court distinguished between privacy violations for paid services and free services. 791 F. Supp. 2d at 715. For free services, the court held that the improper disclosure of personal information alone does not create economic harm. *Id.* But for paid services, the court cited *Doe 1 v. AOL, LLC*, and explained that when a paid provider discloses plaintiffs' personal information in violation of its own policies and ***federal law***, there is economic harm because such misuse of personal information was "not something that members bargained for when they signed up and *paid fees for* [the defendant's] service." *Facebook*, 791 F. Supp. 2d at 715 (quoting *Doe 1*, 719 F. Supp. 2d at 1113) (emphasis added).

The Eleventh Circuit's recent decision in *Avmed* is in accord. In

51

*Avmed*, plaintiffs brought a putative class action resulting from an insurance company's data breach. 2012 WL 3833035. The plaintiffs included a claim for unjust enrichment on the theory that part of their monthly insurance premiums had been paid to ensure data privacy and security, and that it would be unjust for the defendant to retain that money because it failed to abide by its own, and industry-standard, data security practices. *Id.* at *8. The Eleventh Circuit reversed the district court's dismissal of the case (based on the supposed absence of economic harm) and held that the defendant had plausibly been unjustly enriched at the plaintiffs' expense.

As in *Doe 1* and *Avmed*, Plaintiff here alleges economic injury by alleging he paid money in exchange for his *Men's Journal* subscription and that Defendant failed to provide the privacy protections guaranteed to Boorstein by the STL Law, as presumably incorporated into its Privacy Policy. *See Miracle Auto Ctr. v. Superior Court*, 68 Cal. App. 4th 818, 821 (1998) ("As a general rule of construction, the parties are presumed to know and to have had in mind all applicable laws extant when an agreement is made. These existing laws are considered part of the contract just as if they were expressly referred to and incorporated."). Because Boorstein alleged that Defendant failed to

52

provide him with the privacy protections he paid for and was entitled to under the Act and his subscription contract, Plaintiff alleges tangible economic harm sufficient to confer standing.

This Court should therefore find Boorstein has alleged both informational injury and economic damages based on Men's Journal's failure to comply with § 1798.83(b).

## V. BOORSTEIN HAS STATED A CLAIM FOR UNLAWFUL AND UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA'S UCL.

The district court also found Boorstein had not stated a claim under the UCL because Boorstein had not stated an unlawful business practice (i.e., because his claim under the STL Law had failed) and because he did not allege an injury cognizable under the UCL.

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "An unlawful business practice or act within the meaning of the UCL is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *See Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930, 936-37 (N.D. Cal. 2011) (quotation omitted). As explained in detail above, Boorstein has stated a claim under the STL Law and therefore satisfies the requisite "unlawful" business practice prong to

53

support his UCL claim.

Boorstein has also alleged injury to support his UCL claim. There "are innumerable ways in which economic injury from unfair competition may be shown." *Fineman v. Sony Network Entm't Int'l LLC*, No. C 11-05680 SI, 2012 WL 424563, at *2 (N.D. Cal. Feb. 9, 2012). "A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* (citation omitted).

As explained above, *supra* Section IV(B), Men's Journal failed to provide Boorstein with privacy protections that he paid for as part of his subscription to *Men's Journal*, and thus he acquired less value from his subscription that he otherwise would have had Men's Journal complied with the Act. Boorstein has therefore suffered economic injury and has UCL standing because he was deprived the full benefit of his bargain. *See, e.g., Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 920 (N.D. Cal. 2012) (finding economic injury for UCL claim where iPhone had defective signal meter and thus plaintiff was deprived the "benefit of

54

the bargain" for which he paid).

Accordingly, this Court should reverse the district court's order and find Boorstein has stated a claim for unlawful business practices under the UCL.

## CONCLUSION

This Court should reverse the lower court decision. Holding otherwise would effectively grant qualified businesses immunity from their obligation to designate an address or number where customers may request Shine the Light disclosures and from their obligation to provide customers with a description of their rights under the Act. Plaintiff Boorstein, as a California consumer who disclosed his personal information to Men' Journal, had standing to pursue his claims for violation of the STL Law, and he adequately alleged that he suffered both informational and economic injury as a result of Men's Journal's unlawful practices.

Therefore, Plaintiff David Boorstein respectfully prays that this Court reverse the district court's August 17, 2012 Order and the court's Judgment.

Dated: April 15, 2013                    By:   /s/ Megan Lindsey

                                         Attorneys for Plaintiff-Appellant
                                         David Boorstein

Sean Reis
THE REIS LAW FIRM, A.P.C.
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (714) 352-5200
Facsimile: (714) 352-5201
sreis@reisfirm.com

Jay Edelson
Rafey Balabanian
Ari Scharg
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com

Steven Woodrow
Megan Lindsey
EDELSON LLC
999 W. 18th Street, Suite 3000
Denver, Colorado 80202
Telephone: (303) 357-4878
swoodrow@edelson.com
mlindsey@edelson.com

**CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,690 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as well as the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft MacWord 2008 in 14 point Century Schoolbook font.

| 9th Circuit Case Number(s) | 12-56696 |
|---|---|

NOTE: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/ Megan Lindsey

*************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)